**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| JENNIFER L. AUTRY,<br><br>Plaintiff,<br>v.<br><br>STATE OF KANSAS, KANSAS DEPARTMENT OF CORRECTIONS,<br><br>Defendant. | ) | Case No. 6:26-cv-1255 |

## COMPLAINT

COMES NOW Plaintiff Jennifer L. Autry, by and through her attorney of record, Scott M. Ufford of McDonald Tinker PA, and for her complaint against Defendant alleges and states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This case contains federal claims against defendant arising under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et. seq*.
2. This case also contains claims against Defendant arising under Kansas common law for which this Court has supplemental jurisdiction pursuant to 42 U.S.C. § 1367.
3. The amount in controversy exceeds $75,000.00, exclusive of costs and interest.

4. The Court has jurisdiction to hear these claims.

5. Plaintiff has fully exhausted her administrative remedies with respect to her Title VII and Title I claims against Defendant. On May 27, 2026, the EEOC issued a "right to sue" letter to Plaintiff with respect to her claims, and this action has been filed within 90 days of Plaintiff's receipt of that letter.

**THE PARTIES**

6. Plaintiff Jennifer L. Autry. ("Ms. Autry") is an individual residing in Reno County, Kansas.

7. Defendant State of Kansas, Kansas Department of Corrections ("KDOC"), is an employer covered by Title VII of the Civil Rights Act of 1964.

**FACTS RELEVANT TO PLAINTIFF'S CLAIMS**

8. Ms. Autry began working at the KDOC facility in Hutchinson, Kansas, on September 16, 2024.

9. Ms. Autry was hired to work as an Administrative Specialist at the Hutchinson Correctional Facility (HCF) in Hutchinson, Kansas.

10. Special Agent Supervisor, Abriam Lakzadeh, oversaw Ms. Autry's work and had direct authority and supervision over her.

11. Almost immediately after Ms. Autry was hired, Mr. Lakzadeh began exhibiting discriminatory behavior against Ms. Autry including aggressive, vulgar, and derogatory language not used against male employees, yelling

at Ms. Autry and other female employees, closely micromanaging Ms. Autry's and other female employees' work more so than male employees.

12. Mr. Lakzadeh regularly singled out the personal lives of Ms. Autry and other female employees, using past relationships and trauma to insult them and elicit emotional responses, which he did not do with male employees.

13. Specifically, on at least one occasion Mr. Lakzadeh made inappropriate and vulgar remarks about abuse that Ms. Autry had endured in a prior relationship, including saying, "I forgot you had your face re-arranged by your black ex-boyfriend," and later calling Ms. Autry "stupid" for getting hit in the head so many times by her ex-boyfriend.

14. Mr. Lakzadeh would continue to comment on Ms. Autry's prior relationship, attributing it to her abuse to her "forgetfulness."

15. Mr. Lakzadeh regularly made comments that, "Jen likes to date black guys," and "jokingly" accused her of calling another employee the "n-word" knowing that it would upset her.

16. When asked by Ms. Autry for a tour of the facility, Mr. Lakzadeh commented, "Why, are you trying to find a boyfriend."

17. Mr. Lakzadeh referred to Ms. Autry and two of the other female employees in the department as "rape-able."

18. At one point, in front of Ms. Autry and other employees, including other female employees, Mr. Lakzadeh referred to another female employee as being a "clit commander."

19. Mr. Lakzadeh referred to Ms. Autry and another female employee, Cassandra Clemmer, as “scissor sisters,” a derogatory and homophobic term.
20. Mr. Lakzadeh made regular comments about Ms. Autry’s family, telling her that they “hate” her.
21. Mr. Lakzadeh additionally required Ms. Autry to send all emails to him for review before sending them out. Mr. Lakzadeh did not require this level of oversight for male employees.
22. After receiving a compliment from another employee, Mr. Lakzadeh commented, “Don’t tell her that, she’ll think she’s doing something right.”
23. The harassment and discriminatory behavior by Mr. Lakzadeh against Ms. Autry continued on a regular basis through March of 2025 despite the behavior being known by Mr. Lakzadeh’s administrative leadership, including Human Resources Director Tina Broomfield and Warden Dan Schnurr who observed his behavior at morning administrative meetings.
24. On or around March 17, 2025, Ms. Autry and two other female employees, Cassanda Clemmer and Elizabeth Aragon, who also experienced discrimination at the hands of Mr. Lakzadeh, filed an EEO Complaint with Human Resources Director, Tina Broomfield.
25. Prior to filing the complaint with Ms. Broomfield, other male employees and Hutchinson Correctional Facility leadership were aware of Mr. Lakzadeh’s

conduct and failed to report or take any action, effectively condoning and supporting his behavior.

26. Based on information and belief, on March 18, 2025, Jeff Pettijohn spoke with Don McKenna, two of the male employees in the EAI department with Ms. Autry, and stated, "All the girls had to do was talk to Abe if there was a problem, but now they went behind his fucking back."

27. Despite being aware of his conduct for months, no action was taken against Mr. Lakzadeh until he was placed on administrative leave in March of 2025 for an investigation to be conducted. However, despite advising Ms. Autry that he would be required to complete training as a prerequisite for return, there is no indication that Mr. Lakzadeh received the required training.

28. On information and belief, Defendant failed to follow through with any further corrective action against Mr. Lakzadeh following his placement on administrative leave.

29. Following his administrative leave, Mr. Lakzadeh was allowed to remain in charge of Ms. Autry and other women against whom he had discriminated.

30. By failing to take prompt and sufficient action against Mr. Lakzadeh, Defendant tolerated improper treatment of Ms. Autry while treating similarly-situated male employees more favorably.

31. After Defendant failed to take sufficient action against Mr. Lakzadeh, Ms. Autry, as well as Ms. Clemmer and Ms. Aragon, filed complaints with the Kansas Human Rights Commission.

32. Ms. Autry's original KHRC complaint was filed on May 15, 2025.

33. Ms. Autry additionally suffers from multiple chronic illnesses, including chronic kidney disease, chronic back conditions, anxiety, post-traumatic stress disorder, and panic disorder.

34. Ms. Autry communicated her illnesses to her supervisors. Ms. Autry occasionally required time off of work to attend doctor's appointments and tend to her illness, in particular her chronic kidney disease.

35. Defendant failed to provide sufficient accommodations for Ms. Autry as a result of her illness.

36. Instead, on June 4, 2025, barely three weeks after filing her KHRC complaint, Ms. Autry received a notice of intent to terminate her position.

37. On June 9, 2025, Ms. Autry was terminated from her position as Administrative Specialist, using her absences due to her illness as the pretext for termination.

38. Ms. Autry was targeted for filing complaints against Mr. Lakzadeh and the KDOC.

39. On June 13, 2025, Ms. Autry filed an amended complaint with the KHRC.

## **COUNT 1: TITLE VII HOSTILE WORK ENVIRONMENT**

40. Plaintiff incorporates by reference all other allegations contained in the paragraphs above.

41. Ms. Autry is a woman.

42. Ms. Autry sustained continued, pervasive and severe harassment when she was supervised by Mr. Lakzadeh in the following nonexclusive ways:

    a. By being yelled, belittled and demeaned, which did not happen with similarly situated male employees;

    b. By being excessively micro-managed to an extent not done to similarly situated male employees.

    c. By being harassed based on her prior relationships and trauma;

    d. By her supervisor referring to another female employee as a “clit commander” in her presence;

    e. By being told that she was “rape-able”;

43. This harassment continued throughout Ms. Autry’s employment, despite the behavior being known by Mr. Lakzadeh’s supervisors;

44. The harassment altered the terms, conditions and privileges of employment for Ms. Autry.

45. The harassment clearly stemmed from gender-based animus as the comments and restrictions were based on Ms. Autry’s status as a woman.

46. The State and KDOC collectively created and maintained a hostile work environment by allowing a hostile and discriminatory supervisor to degrade and humiliate Ms. Autry.

47. As a direct and proximate result of this violation of Title VII, Ms. Autry suffered damages due to Defendant’s failure to create and maintain a

workplace free of discrimination, where gender is not a barrier to opportunity.

**COUNT 2: TITLE VII DISPARATE TREATMENT, GENDER DISCRIMINATION**

48. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

49. Ms. Autry satisfactorily performed her duties for Defendant to the best of her ability, subject to her physical limitations due to her disabilities.

50. However, almost immediately after being hired, Ms. Autry's job duties began being restricted based upon the conditions and micromanagement against her and other female employees by Mr. Lakzadeh. Male employees were not subject to the same or similar conditions.

51. Ms. Autry was ultimately terminated in June 2025 under the pretext that she had missed too much time from work due to her disabilities, while similarly situated male employees were regularly given accommodations, including leave time, to tend to disabilities.

52. As a direct and proximate result of these disparate treatment violations of Title VII, Ms. Autry suffered damages due to the illegal discrimination against her by the State of Kansas and KDOC.

**COUNT 3: TITLE VII RETALIATION**

53. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

54. Ms. Autry reported hostile harassment of Mr. Lakzadeh to HR Director, Tina Broomfield on March 17, 2025.

55. Ms. Autry filed her initial complaint with the KHRC on May 15, 2025.

56. Barely three weeks after filing her complaint with the KHRC, Ms. Autry received a notice to terminate her employment.

57. Ms. Autry was further retaliated against by KDOC following her internal complaint against Mr. Lakzadeh and after filing her complaint with the Kansas Human Rights Commission, specifically based on increased scrutiny of her work and ultimately terminating her under false pretenses.

58. As a direct and proximate result of these violations of Title VII, Ms. Autry suffered damages due to this Defendant's retaliation against her.

**COUNT 4: TITLE I OF THE ADA INDIVIDUAL CLAIM**

59. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

60. Title 1 of the ADA, 42 U.S.C. § 1211, *et. seq.*, and its implementing regulation, 29 C.F.R. Part 1630, requires covered employers to provide reasonable accommodations to otherwise qualified employees with disabilities.

61. Ms. Autry is an otherwise qualified individual with a disability who was limited in her ability to perform the essential functions of her position as Administrative Specialist.

62. Specifically, Ms. Autry required additional breaks and time away from work due to the pain caused by her disabilities.

63. Other similarly situated employees of Defendant received accommodations, including leave time, to manage and tend to their disabilities.

64. Defendant failed to provide Ms. Autry with reasonable accommodations where such accommodations were available.

65. Instead, Defendant terminated Ms. Autry, using the time she needed to be away from work due to her disabilities as the pretext for her termination.

66. Defendant's conduct in failing to provide reasonable accommodations constitute discrimination on the basis of disability under Title 1 of the ADA.

67. As a direct and proximate result of these violations of Title I, Ms. Autry suffered damages due to the illegal discrimination against her by the State of Kansas and KDOC.

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant; that the Court award Plaintiff all damages to which she is entitled, including but not limited to, lost wages, statutory penalties, compensatory damages, and damages for emotional distress and mental anguish; that the Court award her reasonable attorney fees and the costs of this action; and that the Court allow such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

/s/ Scott. M. Ufford
Scott M. Ufford, #27524
McDonald Tinker PA
300 W. Douglas, Ste. 500

Wichita, Kansas 67202
P: 316-263-5851
F: 316-263-4677
E: sufford@mcdonaldtinker.com
*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues.

/s/ Scott. M. Ufford
Scott M. Ufford

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Wichita, Kansas, as the place of trial in this case.

/s/ Scott. M. Ufford
Scott M. Ufford